

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00179-CV

**IN THE INTEREST OF L.D.**, Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2024PA00488
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:     Rebeca C. Martinez, Chief Justice
Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice

Delivered and Filed: July 23, 2025

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child, L.D.[1] Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights is in the child's best interests. Because we find the evidence sufficient, we affirm.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the child's mother as "Mother," and we refer to the child using his initials or as "the child." *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2). Although the trial court's order terminates the parental rights of Mother and the father, only Mother appeals.

## BACKGROUND

At the time of L.D.'s birth, Mother was incarcerated and the Department had a pending case involving her rights to two other children. The related case has since resulted in the termination of her rights as to those children. Mother returned to incarceration two days after L.D. was born, at which time, L.D. was placed in foster care. He was ultimately placed in a home along with one of his older siblings, where he remained at the time of trial.

A Family Service Plan was created by the Department, which Mother signed, and which required her to engage in services in order to demonstrate an ability to provide a safe and stable home for L.D. Among other things, the Family Service Plan sought to address Mother's lack of income and housing,[2] her need to learn parenting skills and create a social support system, and her physical and mental health.[3]

The trial court held a bench trial on February 13, 2025. Mother was unable to attend the trial because she remained incarcerated, this time for a pending murder charge. The trial court heard testimony from the legal caseworker, the caseworker who handled the prior matter involving the child's older siblings, and the foster mother. On April 25, 2025, the trial court signed an order terminating Mother's parental rights to the child based on statutory grounds (N) and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE § 161.001(b)(1)(N), (O). The trial court also found it was in the child's best interests to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

---

[2] Mother does not have a home, stayed at Haven for Hope during a one-month house arrest before returning to jail, and plans to return to Haven for Hope if and when she is released. She also does not have a job.

[3] Mother has syphilis, to which L.D. was exposed at birth, and has previously stated she was unable to care for her children due to depression.

**STATUTORY REQUIREMENTS AND STANDARD OF REVIEW**

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266).

"A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

**BEST INTEREST**

In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's findings that termination of her parental rights was in the child's best interest. When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d

112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[4] *See id.* § 263.307(b). We also consider the *Holley* factors.[5] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

---

[4] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE § 263.307(b).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*(A) Department's Reasons for Termination*

Here, the evidence presented to the trial court raised the following concerns: (a) Mother was incarcerated at the time of the child's birth and also at the time of the trial for a pending charge of murder against a former paramour; (b) Mother has no housing or income and, because of that, plans to return to Haven for Hope when she is released;[6] (c) Mother failed to engage in services required by the Family Service Plan, even during the month that she was not incarcerated, refusing to even meet with the Department;[7] (d) Mother has had no visits with the child who was ten months old at the time of trial; (e) Mother has been unable to address her mental health, which was an issue with her ability to care for her other children, while incarcerated; and (f) finally, Mother's support system chose not to be engaged with the children or the case.

---

[6] Mother was on house arrest, released from jail, for about a month in November 2024, and spent that time at Haven for Hope. She did not visit the child or otherwise engage with the Department or any service providers.

[7] While Mother told the caseworker that she has taken classes while incarcerated relating to parenting and anger management, no proof of such engagement has been provided.

*(B) Best Interest Factors*

*(1) Desires of the Child and Whether the Child is Fearful of Returning to Mother*

The Department elicited no testimony regarding the child's desires. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied).

Here, the caseworker testified Mother has had no visits with the child since removal. The child is in a foster home with his older sibling who was two years old at the time of trial. According to the caseworker, the child is bonding with his sibling and foster mother and is in a safe and loving environment. As well, the foster mother testified that she also has her own fourteen-year-old daughter living with them, with whom the child is especially close. While the child has other siblings that are not placed in the same home, foster mother ensures that he sees another sister every three to four weeks and will continue to do so. The foster mother testified she wants to adopt L.D.

*(2) Emotional and Physical Needs, Age and Physical and Mental Vulnerabilities*

At the time of trial, L.D. was ten months old and doing well, despite being exposed to syphilis at the time of his birth. He has been cleared by an infectious disease doctor. He has some muscle tightness but is working through it with physical therapy and the foster mother is addressing his asthma with a pulmonologist. Otherwise, he is healthy and developing in normal fashion.

*(3) Emotional and Physical Dangers, History of Physical Abuse or Substance Abuse, Magnitude of Harm*

The caseworker testified that Mother is incarcerated for a pending charge of murder relating to a former paramour and that her history of aggression and domestic violence was a concern. Further, the caseworker testified that she does not believe that Mother can provide a safe

and stable home or that Mother has demonstrated any behavioral changes despite not only this case but the prior termination of her rights to two other children.

*(4) Parental Abilities*

While the caseworker stated that Mother told her she had done some parenting classes and was working on anger management while incarcerated, Mother has provided the caseworker no proof of such engagement. Mother has not shown an ability to earn an income, maintain housing, or engage in any services required by the Department that would allow her to demonstrate an ability to parent her children.

*(5) Programs Available and Social Support System*

Mother has not attempted to take advantage of the programs and services offered to her by the Department. Even when she was on house arrest, during a one-month stint out of jail, Mother lived at Haven for Hope and refused to engage with the Department or otherwise use that time to visit with the child or engage in services. The Department attempted to meet with her and worked with Haven for Hope and Mother's probation officer to ensure she could engage in services, but Mother did not engage. Further, Mother's own support system, two names provided by her, both elected not to participate in the suit.

*(6) Plans for the Child*

Here, the foster mother testified she wants to adopt L.D. With such a plan, L.D. will not only be raised with a sister, but he will have ongoing contact with another sibling.

*(7) Stability of the Home*

As mentioned above, Mother has no income or housing. She plans to return to Haven for Hope when she is finally released.

*(8) Acts or Omissions and Excuses*

As found by the trial court as a reason for termination, Mother failed to engage with any of the services offered by the Family Service Plan, even when she was not incarcerated but on house arrest and even after the Department arranged for her to do so. The Family Service Plan was admitted as an exhibit at trial without objection.

*(9) Frequency and Nature of Out-of-Home Placement*

The Department presented testimony from a caseworker that handled the matter involving Mother's two other children. The former caseworker testified that the Department has offered Family Based Services to Mother for three years and attempted to avoid removal by doing so. But concerns regarding Mother's drug use and instability and her incarceration caused the Department to move forward with removal and ultimately termination of those two other children. As noted, even after such termination, the Department has not seen any behavioral change or desire to engage by Mother.

*(10) Results of Psychiatric, Psychological, or Developmental Evaluations*

There was no evidence presented regarding the results of psychiatric, psychological or developmental evaluations of Mother, despite the fact that the Family Service Plan noted Mother's "previous acknowledgement of mental health concerns" and required her to complete a psychosocial assessment and counseling sessions.

*(11) Willingness and Ability to Complete Counseling and Cooperate with the Department*

As mentioned above, the evidence established that Mother is not willing to complete counseling or cooperate with the Department.

**CONCLUSION**

Having reviewed the record and considered all the evidence under the appropriate standards of review, and given that these factors weigh in favor of termination, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the child's best interest. *See* TEX. FAM. CODE § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Accordingly, we affirm the trial court's order of termination.

Lori Massey Brissette, Justice